UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRENDA PARKER, | ) |
| Plaintiff, | ) |
| vs. | ) |
| OFFICER LOYAL, in official and individual capacity, | ) No. 1:15-cv-00826-JMS-TAB |
| OFFICER PILKINGTON, in official and individual capacity, | ) |
| OFFICER ROLINSON. in official and individual capacity, | ) |
| MARK SENESAC, and | ) |
| CITY OF INDIANAPOLIS, | ) |
| Defendants. | ) |

## **ORDER**

This case involves numerous claims brought by *pro se* Plaintiff Brenda Parker related to the repossession of her vehicle in May 2014. In the two years since Ms. Parker filed her Amended Complaint, the Court has dismissed several of her claims. As a result, the only Count of Ms. Parker's Amended Complaint that remains pending is a 42 U.S.C. § 1983 due process claim against Defendants City of Indianapolis, Officer Loyal, Officer Pilkington, and Sergeant Rolinson (collectively, the "City Defendants") and Mark Senesac—a tow truck driver.

Presently pending before the Court is a Motion for Summary Judgment filed by the City Defendants. [Filing No. 109.] Ms. Parker has responded to the City Defendants' Motion, and it is now ripe for review.

# I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d

892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standards detailed in Part I. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to the Plaintiff as the non-moving party, drawing all reasonable inferences in her favor. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

However, much of the evidence Ms. Parker cites in her response is not material to her case against the City Defendants and will not, therefore, be considered. *See Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."). Similarly, several "facts" alleged by Ms. Parker in her response do not contain any citations to the record, as required

3

by Local Rule 56.1(e).[1] Consistent with Seventh Circuit authority, district courts may require *pro se* litigants to strictly comply with local summary judgment rules. *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016), *reh'g denied* (Sept. 2, 2016) (stating that the Seventh Circuit has "repeatedly" held that requiring strict compliance with Northern District of Illinois Local Rule 56.1 is not an abuse of a district court's discretion). As such, Ms. Parker's *pro se* status does not excuse her failure to cite evidence in support of the facts she alleges in her response, and her conclusory statements without citation to the record will not be considered as undisputed facts. *Greer v. Bd. of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) (quotation omitted) (noting, with regard to a *pro se* plaintiff, that "neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes").

The undisputed material facts of this case as they relate to the City Defendants are as follows: at approximately 11:15 p.m. on May 9, 2014, Brenda Parker called 911 to report that her 2006 Ford Explorer had been stolen. [Filing No. 110-5 at 2; Filing No. 11-3 at 2.] She informed the dispatcher, "Someone just stole my vehicle in front of my apartment building." [Filing No. 111.][2] During the 911 call, Ms. Parker ran around the curve of the circular drive in her apartment complex and noticed that the Explorer was being pulled by a tow truck that was stopped. [Filing No. 11-3 at 2.] Ms. Parker remarked to the 911 operator, "There he is. They're still here." [Filing

---

[1] Local Rule 56.1(e) requires a party to:
> support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence. The evidence must be in the record or in an appendix to the brief. The citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence.

[2] A compact disc containing recordings of the telephone calls between Ms. Parker and the 911 dispatcher, and communications between the 911 dispatcher and Officer Loyal was filed with the Court and docketed at Filing No. 111.

4

No. 111.] Two officers from the Indianapolis Metropolitan Police Department ("IMPD") – David Loyal and Nikole Pilkington – were dispatched to the scene. [Filing No. 110-5 at 2.]

Shortly thereafter, the 911 operator called Ms. Parker back and notified her that police officers were on their way. [Filing No. 111.] Ms. Parker told the 911 operator that the person with her vehicle said "he had a repossession order." [Filing No. 111.] Based on this information, the 911 operator contacted Officers Pilkington and Loyal and informed them that "It is a tow truck driver." [Filing No. 111.]

When Officers Pilkington and Loyal arrived on the scene, the tow truck driver showed the officers a piece of paperwork.[3] [Filing No. 110-6 at 4; Filing No. 110-7 at 5.] Ms. Parker then ran back to her apartment to retrieve a document that she claimed proved that the Explorer had been "written off" by her creditor. [Filing No. 11-3 at 3; Filing No. 110-8 at 4.] Ms. Parker showed a document to the officers that did not contain her name or specifically identify a 2006 Ford Explorer, but that stated that the unpaid balance for an automobile was "CHRGD OFF." [Filing No. 110-8 at 4; Filing No. 110-8 at 10.] This was the only document Ms. Parker showed to the officers. [Filing No. 110-8 at 803.] The officers told Ms. Parker that this was a "civil matter" and that they could not "get involved." [Filing No. 11-3 at 4.] They also stated that the document provided by the tow truck operator was more recent than the document produced by Ms. Parker and informed Ms. Parker that a creditor has a right to possession when a vehicle payment is not made. [Filing No. 11-3 at 4.] Ms. Parker then requested to speak with the officers' supervisor. [Filing No. 11-3 at 4.]

---

[3] The Court notes that Ms. Parker claims that the paperwork presented to Officers Pilkington and Loyal was "created well after April 2, 2014" due to the fact that the printout she procured contained a copyright date of 2016. [Filing No. 137 at 5 (citing Filing No. 138-1 at 2).] However, Ms. Parker presents no evidence other than her own speculative statement that the copyright date invalidates the paperwork's purported repossession order date. In any event, the City Defendants do not cite to or rely upon the document that Ms. Parker claims is fraudulent. As such, the Court need not and will not address her speculative allegations.

Thereafter, Sergeant Andrew Rolinson arrived at the scene and reiterated to Ms. Parker that the tow truck diver's paperwork was more up to date than hers. [Filing No. 11-3 at 4.] Ms. Parker asked if she could remove her personal belongings from the Explorer and Sergeant Rolinson assisted her in retrieving some items from the vehicle. [Filing No. 110-9 at 4.] Sergeant Rolinson then provided Ms. Parker with a ride back to her apartment. [Filing No. 11-3 at 5.]

Slightly more than a year later, Ms. Parker filed suit against numerous entities and individuals based on this incident, including the City Defendants. [Filing No. 1; Filing No. 11.] Subsequently, the Court dismissed several of the claims set forth in Ms. Parker's Amended Complaint, [Filing No. 21; Filing No. 45], such that the only Count of Ms. Parker's Amended Complaint that remains pending is a 42 U.S.C. § 1983 due process claim against the City Defendants and the tow truck driver, [Filing No. 45 at 8; Filing No. 120 at 7-8]. The City Defendants have moved for Summary Judgment. [Filing No. 109.] Ms. Parker responded to their Motion [Filing No. 137], and it is now ripe for the Court's review.

### III.
#### DISCUSSION

The City Defendants argue that the "sole issue on summary judgment is whether any of the City Defendants violated [Ms.] Parker's Fourteenth Amendment right to due process." [Filing No. 113 at 7.] On this point, the City Defendants' arguments can be divided into two broad categories: arguments concerning state action and those involving qualified immunity. [Filing No. 113 at 9-17.] Given that qualified immunity is "immunity from suit rather than a mere defense to liability," *Armstrong v. Daily*, 786 F.3d 529, 537 (7th Cir. 2015), the Court will turn to the City Defendants' qualified immunity argument first.

### A. Qualified Immunity

The City Defendants argue that Officers Pilkington and Loyal and Sergeant Rolinson (collectively, the "Officers") are immunized from liability because "no reasonable police officer" would have known that failing to command the tow truck driver to release the Ford Explorer was a constitutional violation. [Filing No. 113 at 16.]

In response, Ms. Parker contends that the City Defendants "have given conclusory statements" in arguing for qualified immunity. [Filing No. 137 at 18-19.] In addition, she argues that the Officers aided the tow truck driver and others "in the completion of a crime and the illegal attempts to cover up the fraud and illegal acts and actions." [Filing No. 137 at 17.]

As a general matter, the "doctrine of qualified immunity shields public officials from civil liability if their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The Seventh Circuit recently described the burden that falls upon a plaintiff when a defendant raises a qualified immunity defense, providing that:

> [a]lthough qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once the defendants raise it. To do so, the plaintiff must show (1) that the defendant violated a constitutional right, when construing the facts in the light most favorable to the plaintiff, and (2) that the right was clearly established at the time of the alleged violation, such that it would have been clear to a reasonable actor that her conduct was unlawful. A failure to show either is fatal for the plaintiff's case, and we may begin (and possibly end) with either inquiry.

*Archer v. Chisholm*, __ F.3d __, No. 16-2417, slip op. at 13 (7th Cir. Aug. 29, 2017) (citations omitted); *see also Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)) (providing that a plaintiff can meet the burden of demonstrating the violation of a clearly established right "by showing that there is 'a clearly

7

analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'").

"A right is clearly established if it is sufficiently clear that any reasonable official would understand that his or her actions violate that right." *Zimmerman v. Doran*, 807 F.3d 178, 182 (7th Cir. 2015) (citing *Mullenix v. Luna*, __ U.S. __, 136 S.Ct. 305, 308 (2015)). The Supreme Court has stated that "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Ms. Parker has failed to meet her burden of defeating the City Defendants' qualified immunity argument. First, she failed to point to any clearly established right that was violated when Officers Pilkington and Loyal and Sergeant Rolinson declined to interfere with the repossession of her Ford Explorer. Similarly, she failed to point to any clearly analogous case establishing a right to be free from a repossession, or to otherwise show that existing precedent has placed this issue beyond debate. Because Ms. Parker has failed to meet her burden under the prevailing test for qualified immunity, Officers Pilkington and Loyal and Sergeant Rolinson are immune from suit and are, therefore, entitled to summary judgment on the grounds of qualified immunity.

**B. State Action**

As a result of the Court's determination that Sergeant Rolinson and Officers Pilkington and Loyal are immune from suit, the Court need not address the parties' arguments concerning state action. However, given Ms. Parker's *pro se* status, the Court will briefly address her unavailing argument that the conduct of Sergeant Rolinson and Officers Pilkington and Loyal converts the

repossession at issue in this case into state action such that she can bring her § 1983 claim against the Officers. [Filing No. 137 at 12.] Ms. Parker cites to a 1981 case from the Ninth Circuit Court of Appeals for the proposition that "police intervention and aid in [a] repossession does constitute state action." *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981). However, Ms. Parker has failed to point to any evidence in the record that supports a contention that the Officers assisted or aided the tow truck driver to effectuate a repossession. The only specific contention Ms. Parker makes on this point is to note that the Officers "did in fact get involved with the theft of vehicle because they were present at the scene for about 50 minutes." [Filing No. 137 at 4.] However, the case upon which Ms. Parker relies is instructive on this issue: "mere acquiescence by the police to 'stand by in case of trouble' is insufficient to convert a repossession into state action." *Harris*, 664 F.2d at 1127. As such, merely citing the amount of time the Officers spent on the scene is not sufficient to convert the repossession into state action. Similarly, her contention that the "[v]ehicle was still on the ground when [Ms.] Parker continued to dispute," [Filing No. 137 at 12], also does not convert the repossession into state action because it does not demonstrate that the Officers assisted with the repossession in any way.

Therefore, even if Sergeant Rolinson and Officers Pilkington and Loyal were not immune from suit, the evidence relied upon by Ms. Parker is insufficient to raise a genuine issue of material fact concerning whether the Officers' actions converted the repossession into state action. To the contrary, the undisputed record before this Court, including the facts set forth by Ms. Parker in her Complaint and in her Response Motion, supports a finding that the repossession was done without any state action.

### C. Claims Against the City of Indianapolis

The Court now turns to Ms. Parker's claim against the City of Indianapolis. The City Defendants argue that that municipalities cannot be liable when there has been no constitutional violation, and here, there was no constitutional violation so Ms. Parker's claim fails. [Filing No. 113 at 17.]

In response, Ms. Parker contends that the "City of Indianapolis . . . has not responded to their own summary judgment." [Filing No. 137 at 17.] In addition, she makes several arguments concerning the Officers' training on the subject of due process. [Filing No. 137 at 12.]

In reply, the City Defendants argue that Ms. Parker's contention that the City failed to train Officers "is incorrect, but, in any case, irrelevant." [Filing No. 149 at 5.] Instead, the City Defendants argue that "[w]hat is relevant and material is what the defendant police officers actually did at the scene." [Filing No. 149 at 6.]

In bringing suit against the City of Indianapolis, Ms. Parker appears to be basing her claim on entity liability for municipal corporations under section 1983, established by *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But without a viable constitutional claim against the individual defendants, the City cannot be liable under *Monell*. *Aldous v. City of Galena, Illinois*, 2017 WL 2963514, at *3 (7th Cir. July 12, 2017) (citing *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (2012)). Where a constitutional violation has occurred, the "critical question" under *Monell* "is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017). In order to prevail on such a claim, the Seventh Circuit has explained that "[e]ither the content of an official policy, a decision by a final decisionmaker, or evidence of custom will suffice." *Id.* Where a § 1983 claim is premised on a city's failure to train, the Supreme Court has held that "the inadequacy of police training may serve

as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Here again, there must be evidence of "a conscious decision not to take action," which can be proven in a number of ways, including "[a] single memo or decision showing that the choice not to act is deliberate." *Glisson*, 849 F.3d at 381.

Ms. Parker's § 1983 claim against the City of Indianapolis fails because, as set forth in Part III.B of this Order, there is no evidence that the Officers assisted with the repossession. Accordingly, even viewing the record in the light most favorable to Ms. Parker, no reasonable fact finder could find a constitutional violation as a result of the Officers' conduct in this case.

In addition, the Court notes that even if she could establish a constitutional violation, under the rules set forth by *City of Canton* and its progeny, Ms. Parker has brought forth no evidence, such as a memo or decision from the city, showing that the City of Indianapolis made a policy decision that caused the constitutional deprivation. *See Glisson*, 849 F.3d at 379 ("The central question is always whether an official policy, however expressed . . . caused the constitutional deprivation.").

Because no constitutional violation occurred in this case, Ms. Parker's *Monell* claim fails and the City of Indianapolis is entitled to summary judgment.

### D. Claims Against Defendant Mark Senesac

Because the City Defendants are entitled to summary judgment, the only claim remaining is a § 1983 claim against Mark Senesac, the tow truck driver involved in the repossession. In its 2015 screening order, the Court explained that Ms. Parker's claim against Mark Senesac (then known to the Court only by the name "Dalius") consisted of a § 1983 conspiracy claim originating

from a secret conversation that she alleged Mr. Senesac had with the Officers at the scene of the repossession. [Filing No. 21.] The Court went on to state:

> [t]o establish section 1983 liability against a private person through a conspiracy theory, "a plaintiff must demonstrate that (1) a state official and a private individual(s) reached an understanding to deprive the plaintiff of [her] constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents."

[Filing No. 21 at 5-6 (quoting *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013)).] Thereafter, the general rule for a § 1983 conspiracy applies, requiring a plaintiff to show that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). The latter prong of this test is important for the Court's present purposes because, having concluded that no constitutional violation occurred, there is no way that Ms. Parker could prevail on her claim against Mr. Senesac.

The Seventh Circuit has held that, "[w]here one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006), as amended on denial of reh'g (May 25, 2006) (quoting *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000)); s*ee also Greeno v. Daley*, 414 F.3d 645, 657 (7th Cir. 2005) (affirming dismissal of unserved defendants where plaintiff pointed to no evidence that would have defeated summary judgment for those defendants). However, this rule does not extend to claims that "require unique allegations" such that a plaintiff would not have had the opportunity to assert them in opposition to summary judgment. *See, e.g., Pourghoraishi*, 449 F.3d at 765 (providing that claims against an

officer and claims against a city require unique allegations, such that summary judgment in favor of the two does not rest on common ground).

The relevant question thus becomes – did Ms. Parker have an adequate opportunity to argue that a constitutional violation occurred in this case. In considering this question, the Court is keenly aware of the concerns enunciated by Seventh Circuit with regard to *pro se* litigants in the summary judgment context. *See, e.g., Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992) (holding that *pro se* litigants have a right to be notified of the need to respond to a defendant's summary judgment motion and observing that "the need to answer a summary judgment motion with counter-affidavits is contrary to lay intuition" and there is no "guarantee that a layman will understand the effects of a failure to respond to a summary judgment motion").

In this case, Ms. Parker filed a twenty page response to the City Defendants' Motion and put forth evidence of her own. Accordingly, the Court is satisfied that Ms. Parker has been provided with, and has taken advantage of, the opportunity to set forth her evidence that a constitutional violation occurred. Nonetheless, she was unable to show that the repossession at issue in this case deprived her of due process. As such, Ms. Parker's claim against Mr. Senesac fails because she cannot show that Mr. Senesac and the Officers took overt acts that resulted in her actually being deprived of a constitutional right under the test set forth in *Beaman*. Unlike the claims at issue in *Pourghoraishi*, Ms. Parker's claims against the Officers and her claim against Mr. Senesac rest on common grounds because the same alleged due process violation is at the crux of her claims against the Officers and her claim against Mr. Senesac. Having determined that no such constitutional violation occurred, the Court **GRANTS** summary judgment in favor of Mr. Senesac.

# IV.
## CONCLUSION

For the reasons set forth herein, the City Defendants' Motion for Summary Judgment is **GRANTED**. [Filing No. 109.] In addition, summary judgment in favor of Mark Senesac in also **GRANTED**. Final judgment shall issue accordingly.

Date: 9/12/2017

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via US Mail:**

BRENDA PARKER
1427 W. 86TH STREET
#609
INDIANAPOLIS, IN 46260

Mark Senesac
1900 Hart Street, Suite 37D
Dyer, IN 46311

**Distribution via ECF only to all counsel of record**